UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQBAL QAIS NAJJAR,

Plaintiff,

Civil Action No. 16-CV-13472

vs.

HON. BERNARD A. FRIEDMAN

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

_____________________/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR FURTHER PROCEEDINGS**

This matter is presently before the Court on cross motions for summary judgment [docket entries 14 and 18]. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing. For the reasons stated below, the Court shall grant plaintiff's motion, deny defendant's motion, and remand the case for further proceedings.

Plaintiff has brought this action under 42 U.S.C. § 405(g) to challenge defendant's final decision denying her application for Supplemental Security Income ("SSI"). An Administrative Law Judge ("ALJ") held a hearing in June 2015 (Tr. 24-54) and issued a decision denying benefits in July 2015 (Tr. 10-20). This became defendant's final decision in August 2016 when the Appeals Council denied plaintiff's request for review (Tr. 1-3).

Under § 405(g), the issue before the Court is whether the ALJ's decision is supported by substantial evidence. As the Sixth Circuit has explained, the Court

> must affirm the Commissioner's findings if they are supported by substantial evidence and the Commissioner employed the proper legal standard. *White*, 572 F.3d at 281 (citing 42 U.S.C. § 405(g)); *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th

> Cir. 2003); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation marks omitted); see also *Kyle*, 609 F.3d at 854 (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009)). Where the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record might support a contrary conclusion. *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989). However, a substantiality of evidence evaluation does not permit a selective reading of the record. "Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations and quotation marks omitted).

*Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 640-41 (6th Cir. 2013).

At the time of her August 2014 hearing, plaintiff was 57 years old (Tr. 27). She has a fourth grade education and work experience as a hotel housekeeper, fast-food cook, and spot welder (Tr. 28-31). Plaintiff claims she has been disabled since April 2013 (Tr. 187) due to depression and problems with her wrist, back, and shoulders (Tr. 32, 191) and pain in her right arm and shoulder, legs, and knees (Tr. 31, 36). Plaintiff also testified she has insomnia, crying spells, and frequent headaches (Tr. 39-40, 45-46). She indicated she wears a wrist splint constantly and uses a cane to walk (Tr. 32, 37). Plaintiff stated she can walk less than one block, stand for ten minutes, sit for ten to fifteen minutes, and lift at most five pounds (Tr. 41).

The ALJ found that plaintiff's severe impairments are "status post right shoulder surgery, right wrist tendonitis, degenerative joint disorder of the right knee, headaches, and obesity" (Tr. 15). The ALJ found that plaintiff's brain cyst and depression are non-severe impairments (Tr. 16). The ALJ found that plaintiff has the residual functional capacity ("RFC") to perform a limited

range of light work[1] and that her past work as a hotel housekeeper is within this RFC (Tr. 17-20). The ALJ therefore concluded that plaintiff is not disabled (Tr. 20).

Having reviewed the administrative record and the parties' briefs, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence because her RFC evaluation of plaintiff is flawed. Substantial evidence does not support the finding that plaintiff has the RFC to perform her past work as a hotel housekeeper.

First, the ALJ erred in her evaluation of plaintiff's headaches. While the ALJ found that plaintiff's headaches are among her severe impairments (Tr. 15), she made no findings as to the headaches' severity, frequency, or duration. And while the ALJ asserted that "the claimant's alleged chronic headaches . . . have been taken into account in the adopted residual functional capacity" (Tr. 16 n.1), she does not explain how she did so. Plaintiff testified that she experiences headaches three

---

[1] Specifically, the ALJ found that plaintiff has the RFC

> to perform light work as defined in 20 CFR 416.967(b) except the claimant is limited to occasional full extension reaching with the right dominant arm, and frequent handling and fingering with the right dominant hand. The claimant can occasionally crouch and kneel. She cannot read English, and is limited to the performance of simple repetitive tasks.

(Tr. 21.) Section 416.967(b) defines light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

to four times per week and that they last two hours (Tr. 45).[2] She also stated that when the headaches occur, she must "sleep it off until the light because I can't be around light" and that she feels "like my eyes are coming out of my head" (Tr. 45-46). The ALJ did not reject this testimony, which leaves it unrebutted. The vocational expert ("VE") testified that if plaintiff is "off task" more than 20 percent of the workday, she would be unemployable (Tr. 52). On remand, the ALJ must make specific findings as to the severity, frequency, and duration of plaintiff's headaches, and, as appropriate, revise her RFC evaluation of plaintiff and her hypothetical question(s) to the VE accordingly.

The ALJ also erred by failing to properly evaluate plaintiff's obesity. Under defendant's regulations, an adult with a body mass index ("BMI") of 30 or above is deemed to be obese. *See* SSR 02-1p. Plaintiff's BMI is at least 34 (Tr. 17). While obesity is no longer a "listed impairment," this Social Security ruling does require the ALJ to consider it at all steps of the sequential process while evaluating applicants for disability insurance benefits. *See id.*, Policy Interpretation ¶ 3. Further,

> [o]besity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each

---

[2] In February 2015, plaintiff underwent a brain MRI because of "chronic headache" (Tr. 384). The MRI revealed a "[l]eft middle cranial fossa arachnoid cyst." *Id.* When plaintiff followed up with a physician on April 20, 2015, she was told to come back in six weeks because the MRI report was not "in chart" (Tr. 397). While the ALJ states that "it is further unknown whether there is any causal relationship between the claimant's headaches and the cyst" (Tr. 16), the Court notes that the record does not contain any medical reports regarding the cyst after plaintiff's April 20, 2015, appointment. The hearing was held on June 23, 2015. Plaintiff testified, in response to the ALJ's questioning about the cyst, that she "went to a doctor and he saw the CD and they didn't tell me yet" (Tr. 41), but the ALJ did inquire further.

> of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators *must consider* any additional and cumulative effects of obesity.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00Q (emphasis added).

In the present case, the ALJ found that plaintiff's obesity[3] is among her severe impairments (Tr. 15). While the ALJ claimed to have "considered the effects of the claimant's obesity in reducing the claimant's residual functional capacity as described below pursuant to SSR 02-01p" (Tr. 17), plaintiff's obesity is mentioned nowhere else in the ALJ's decision. Nor did the ALJ ask plaintiff if or how her weight affects her other symptoms or her ability to work. In her written decision, the ALJ entirely neglected to analyze the effect, if any, of plaintiff's obesity on her "degenerative joint disorder of the right knee" (clearly, a "musculoskeletal impairment" under SSR 02-1p), which the ALJ found to be among plaintiff's severe impairments (Tr. 15), or on her "degenerative joint disorder of the right ankle and foot," which she found, by itself, to be a non-severe impairment (Tr. 16). While a person of normal weight with such disorders might be able to do the walking and standing required by light-level work, an obese person may well not be able to do so because of the extra stress being placed on the affected joints. On remand, the ALJ must determine how obese plaintiff was during the relevant time period, and consider the effects, if any, of her obesity on her other impairments. In particular, the ALJ must determine whether and to what extent plaintiff's obesity exacerbates her pain in her knee, right ankle and foot, or diminishes her

---

[3] The ALJ noted that plaintiff, at 180 pounds and 5'-1" in height, has "a body mass index of 34.01," which meets defendant's definition of "obese" (Tr. 17). Other entries in the record indicate plaintiff weighed as much as 200 pounds (Tr. 337).

ability to stand, walk, crouch or kneel. In light of any such findings, the ALJ must, as appropriate, revise her RFC evaluation of plaintiff and her hypothetical question(s) to the VE.

The ALJ also erred in neglecting to make any findings as to the side effects of plaintiff's medications. During the relevant time frame, plaintiff was prescribed a number of medications for pain, depression, and anxiety, including citalopram, cyclobenzaprine, hydrododone, diazepam, naproxen, and vicodin (Tr. 194, 208, 313, 396). These medications have known side effects, including insomnia, drowsiness, fatigue, and headaches. *See* http://www.drugs.com/sfx/[drug name]-side-effects.html. Plaintiff listed a number of these side effects on her function report (Tr. 207-208), and at the hearing she testified to experiencing insomnia and headaches (Tr. 39-40). When asked by the ALJ whether she has medication side effects, plaintiff answered, through an interpreter, "[n]o, no, no, I find benefit" and "I find relief with [the pills]. I have to take the pills so I can sedate the pain" (Tr. 41-42).

The ALJ neglected to develop the record as to this medically and vocationally significant issue. Plaintiff's response to the ALJ's question was unclear and should have been clarified with further questioning. In fact, plaintiff indicated that her condition had worsened "[f]rom all the pills" (Tr. 42). Nor did the ALJ mention the issue of medication side effects in her written decision. The Sixth Circuit has held that the ALJ must evaluate "[t]he type, dosage, effectiveness, and side effects of any medication" as part of the process of determining the extent to which side effects impair a claimant's capacity to work. *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (quoting 20 C.F.R. § 416.929(c)(3)(i)-(vi)). Further, hypothetical questions to vocational experts must account for medication side effects. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789-90 (6th Cir. 2009). On remand, the ALJ must (1) determine which

medications plaintiff was taking during the relevant time period, (2) make findings as to the nature and extent of these medications' side effects, if any, and adjust her findings as appropriate regarding plaintiff's RFC, and (3) incorporate these findings in proper hypothetical questions to the VE to determine whether plaintiff can perform any of her past work and, if not, whether other work exists in significant numbers that can be performed by a person such as plaintiff who experiences such side effects.

The ALJ also erred in failing to make any findings as to whether plaintiff needs to use a cane to help her with walking and a wrist brace for pain. At the hearing, plaintiff testified that both of these medical devices were prescribed by doctors, that she uses the cane whenever she walks, and that she wears the wrist brace day and night (Tr. 32, 37, 207). While the ALJ noted that plaintiff "reports that she has used a cane since her [2007 car] accident," she made no finding as to whether plaintiff needs a cane for walking. Similarly, while the ALJ noted that plaintiff's physician "recommended that [she] wrap her wrist with a bandage" (and, indeed, found that one of plaintiff's severe impairments is "right wrist tendonitis" (Tr. 15)), she did not acknowledge plaintiff testimony regarding her need to wear a wrist brace or make a finding as to whether plaintiff needs such a brace. Nor did the ALJ acknowledge that plaintiff's treating physician prescribed a "wrist splint" (Tr. 247). Plaintiff's testimony regarding these medical devices is unrebutted. While it is not the Court's role to weigh the evidence or make factual findings, it seems impossible that anyone who needs to use a cane to walk and a wrist brace to control wrist or hand pain could meet the exertional demands of full-time light-level work. On remand, the ALJ must determine if plaintiff needs a cane or wrist brace and, as appropriate, revise her RFC evaluation of plaintiff and her hypothetical question(s) to the VE.

The ALJ also erred in failing to adequately explain her finding that plaintiff is able to reach with her right arm occasionally, but not constantly (Tr. 20). This was the ALJ's explanation for finding that plaintiff can perform her past work as a hotel housekeeper, but not as a spot welder. However, the Court cannot find substantial evidence in the record to support this conclusion. The ALJ apparently accepted plaintiff's testimony that she had surgery on her right shoulder after she was injured in an October 2007 car accident (Tr. 31-32, 34, 231), as she found that one of plaintiff's severe impairments is "status post right shoulder surgery" (Tr. 15). The ALJ noted that on a number of occasions plaintiff has complained of shoulder pain to her treating physician (e.g., Tr. 229, 230, 239, 241, 329, 331, 335), but she did not mention that an MRI of plaintiff's right shoulder in 2008 found "bursal fluid with synovitis, associated with rotator cuff tearing" (Tr. 306).

Plaintiff testified that she has problems driving "because my arm doesn't allow me" (Tr. 33), and she indicated in her function report that she needs assistance with bathing and dressing because "I can't get my shirts over my arm because of the pain" (Tr. 202). The ALJ acknowledged that plaintiff "states these impairments [including her shoulder issues] cause difficulties with her personal care" (Tr. 18), but she made no findings as to this testimony, which leaves it unrebutted.[4]

---

[4] As in *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007), "[t]he decision in this case fails to 'contain specific reasons for the finding on credibility, supported by the evidence in the case record,' nor is it 'sufficiently specific to make clear to the individual and to any subsequent reviews the weight the adjudicator gave to [plaintiff's] statements and the reasons for that weight,'" as required by SSR 96–7p. Indeed, the ALJ's boilerplate recitation in the present case that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely supported by the record" (Tr. 19) is directly at odds with that Social Security Ruling, which states:

> Moreover, a finding that an individual's statements are not credible, or not wholly credible, is not in itself sufficient to establish that the individual is not disabled. All of the evidence in the case record, including the individual's statements, must be considered before a

Nor did the ALJ make any findings regarding the extent of plaintiff's limitations with her right arm and shoulder, other than to assert, without explanation, that plaintiff "is limited to occasional full extension reaching with the right dominant arm" (Tr. 17). The ALJ did not explain how she concluded that plaintiff can fully extend her right arm in all directions occasionally, but not frequently. Again, it is the ALJ's role, not the Court's, to weigh the evidence and make findings. But it seems unlikely in the extreme that plaintiff can meet the exertional demands of light-level work – particularly the reaching required in housekeeping work – if she needs assistance doing something as simple as dressing because "I can't get my shirts over my arm because of the pain." On remand, the ALJ must evaluate plaintiff's credibility in compliance with SSR 96-7p, make reasoned findings regarding the limitations in plaintiff's use of her right arm (including reaching), and, as appropriate, revise her RFC evaluation of plaintiff and her hypothetical question(s) to the VE.

The ALJ committed the same error in her assessment of the limitations in plaintiff's right hand and wrist. The ALJ found that one of plaintiff's severe impairments is "right wrist tendonitis" (Tr. 15) but offered no reasoned explanation for concluding that plaintiff can use her right hand frequently, but not constantly, for handling and fingering (Tr. 17, 20). The difference is significant because the VE testified that plaintiff's housekeeping job requires "frequent" use of the hands, whereas her fast food job requires "constant" use of the hands (Tr. 50-51). The ALJ found that plaintiff can perform the former job but not the latter (Tr. 17, 20) but did not explain how she

---

conclusion can be made about disability.

SSR 96-7p (July 2, 1996), 1966 WL 374186, at *5.

arrived at this conclusion. In other words, while finding that plaintiff has a severe impairment (tendonitis) in her right wrist, she does not explain how she assessed the extent to which this impairment is vocationally limiting. Nor, in violation of SSR 96-7p, did the ALJ evaluate plaintiff's testimony that her right hand and wrist are painful (Tr. 32) and that she can lift/carry at most five pounds (Tr. 41, 206). Nor did the ALJ acknowledge that plaintiff's treating physician found plaintiff's right hand and thumb to be tender to palpation (Tr. 231, 233, 237, 246, 247) or that x-rays of plaintiff's right wrist showed "degenerative changes of the greater multangular first metacarpal joint" (Tr. 378) or that plaintiff's treating physician prescribing a "wrist splint" (Tr. 247). On remand, the ALJ must evaluate plaintiff's credibility in compliance with SSR 96-7p, make reasoned findings regarding the limitations in plaintiff's right wrist and hand (including "handing and fingering"), and, as appropriate, revise her RFC evaluation of plaintiff and her hypothetical question(s) to the VE.

The ALJ committed the same error in her assessment of plaintiff's right knee pain. The ALJ found that one of plaintiff's severe impairments is "degenerative joint disorder of the right knee" (Tr. 15) but offered no explanation for concluding that plaintiff can nonetheless "occasionally crouch and kneel" (Tr. 17). On remand, the ALJ must clarify the nature and extent of this impairment and, as appropriate, revise her RFC evaluation of plaintiff and her hypothetical question(s) to the VE.

Finally, on remand the ALJ must explain how she determined that plaintiff has the RFC to meet the walking, standing, sitting, and lifting requirements of light-level work. Plaintiff testified that she can walk less than one block, stand for ten minutes, sit for ten to fifteen minutes, and lift at most five pounds (Tr. 41). She gave similar estimates in her function report (Tr. 206).

The ALJ noted these statements, but implicitly rejected them (by finding plaintiff capable of full-time light-level work) without explaining why, in violation of SSR 96-7p. The ALJ's only semblance of an explanation is that "the claimant is able to go shopping, watch television, read, use the computer, attend church, and socialize with others" (Tr. 18).[5] Plaintiff's ability to engage in these limited activities does not support the finding that she can lift up to 20 pounds and walk and stand for the majority of an eight-hour work day. On remand, the ALJ must provide a reasoned explanation for determining plaintiff's exertional abilities and, as appropriate, revise her RFC evaluation of plaintiff and her hypothetical question(s) to the VE.

For these reasons, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence. Remanding the matter for an award of benefits would not be appropriate at this time because the record, in its current state, is not such that "proof of disability is overwhelming or . . . proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Rather, the matter must be remanded so that the record may be further developed to address the deficiencies noted above. Accordingly,

---

[5] At the pages in her function report cited by the ALJ (Ex. B5E/4-8 = Tr. 203-207), plaintiff indicated that "my daughter reminds me to take a shower and get dressed to go places"; that "sometimes I need my daughter to remind me to take my medicine"; that she does not prepare her own meals or do any housework or yard work because "I cannot walk up & down stairs or lift heavy loads of laundry or vacuum"; that she can drive a car but "sometimes I get lost & also I cannot drive around in a car by myself, I have anxiety & difficulty breathing"; that she goes shopping once per week for 1-2 hours; that her hobbies and interests consist of "watching TV, pray[ing], read[ing] magzines & talk[ing] to my children"; that in terms of social activities she will "talk, conversate [sic] over the computer (video chat) & shop; that every week or biweekly she goes to church, the grocery store, or a friend's house, but she needs to be reminded to go and she needs someone to accompany her.

IT IS ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is granted and this matter is remanded for further proceedings as specified above. This is a sentence four remand under § 405(g).

Dated: March 3, 2017
Detroit, Michigan

S/ Bernard A. Friedman______
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE